NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RYAN W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.W., *Appellees.*

No. 1 CA-JV 16-0143
FILED 11-3-2016

Appeal from the Superior Court in Maricopa County
No. JD29174
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Thomas C. Kleinschmidt[1] delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

---

**K L E I N S C H M I D T**, Judge:

¶1　　　　Ryan W. ("Father") appeals the juvenile court's order terminating his parental rights to J.W.　He challenges the sufficiency of the evidence supporting termination.　Because we conclude that the court's findings are supported by reasonable evidence, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Father is the biological parent of J.W., born in August 2014.[2] Father has a history of substance abuse and was incarcerated for burglary, retail theft, possession of drug paraphernalia, and possession/use of a dangerous drug at the time of J.W.'s birth.

¶3　　　　At the time of the child's birth, both Mother and J.W. tested positive for opiates.　As a result, J.W. remained hospitalized for several weeks and the Department of Child Safety ("DCS") took temporary custody of the child after discharge.

¶4　　　　During Father's incarceration, the juvenile court adjudicated the child dependent and ordered DCS to attempt family reunification concurrent with severance and adoption.　Father was offered paternity testing by DCS and encouraged to participate in all services available to him during his incarceration.　While incarcerated, Father sent J.W. approximately three cards and four letters but was unable to visit with the child.

---

[1]　　The Honorable Thomas C. Kleinschmidt, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]　　Samantha C. ("Mother") had her parental rights terminated in the same proceeding, however, because she has not joined in this appeal we do not review her findings.

**¶5** Father was released from prison in September 2015 and met J.W. for the first time the day after his release. Father found employment after his release and later obtained his own apartment. As part of his case plan after release, Father was required to participate in random urinalysis testing, substance-abuse treatment, parent-aide services, a psychological evaluation, and individualized counseling.

**¶6** In December 2015 Father allowed Mother, who has a history of substance abuse and who had not participated in drug testing for over a year, to move into his apartment. Thereafter, as discussed in detail below, Father did not comply with recommended testing and counseling.

**¶7** In August 2015 DCS filed a motion to terminate Father's parental rights to the child and in February 2016 filed an amended motion for termination of the parent-child relationship on the grounds of abandonment and fifteen-months out-of-home placement pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(1), 8(c).[3] Father contested the severance and the court held a two-day severance trial in February 2016. Afterwards, the court filed a severance order based upon Father's failure to remedy circumstances that caused the child to be in an out-of-home placement for more than fifteen months and found that severance was in the best interests of the child.[4] Father timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) (2016), 12-2101 (2016) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## DISCUSSION

**¶8** The right to custody of one's child is fundamental, but it is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To support termination of parental rights, one or more of the statutory grounds for termination must be proven by clear and convincing evidence. A.R.S. § 8-537(B); *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 176-77, ¶ 9 (App. 2014). In addition, the court must find by a preponderance of the evidence that termination is in the best interests of the

---

[3] Absent material revision after the relevant date, we cite a statute's current version.

[4] The court did not find that DCS met its burden of proof as to Father regarding the ground of abandonment.

child.  *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11 (App. 2011); A.R.S. § 8-533(B).

**¶9**        We view the evidence in the light most favorable to sustaining the juvenile court's findings. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011).  As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).  We will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

### Reasonable Evidence Supports a Termination of Parental Rights Under A.R.S. § 8-533(B)(8)(c)

**¶10**        To justify termination of parental rights under A.R.S. § 8-533(B)(8)(c), DCS must prove (1) the child has been in a court-ordered out-of-home placement for fifteen months or longer; (2) the parent has been unable to remedy the circumstances which led to the out-of-home placement; and (3) there is a substantial likelihood that the parent will be incapable of providing "proper and effective parental care and control in the near future."  Father challenges the juvenile court's findings that he failed to remedy the circumstances that caused the child's out-of-home placement and that he would be unable to properly care for the child in the near future.[5]  Specifically, Father asserts that "despite not completing some of the services that DCS offered," he "demonstrated sobriety, maintained employment, and secured housing."

**¶11**        In determining whether the parent has been able to remedy the circumstances resulting in out-of-home placement, we consider the circumstances that prevent a parent from being able to appropriately provide for the child at the time of the severance. *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).  The dependency petition alleged that Father was unable to provide proper, effective parental care and control due to substance abuse.  In connection with its obligation to provide reunification services, DCS requested that Father participate in

---

[5]        DCS is also required to establish that it made diligent efforts to provide appropriate reunification services.  A.R.S. § 8-533(B)(8).  Father does not challenge the juvenile court's finding that DCS made reasonable efforts to reunify the family.

random urinalysis testing, substance-abuse treatment, parent-aide services, a psychological evaluation, and individualized counseling.

¶12 The record reflects that Father participated in numerous services after his release in September 2015, including four months of clean urinalysis testing, substance-abuse treatment with SAGE Counseling, parent-aide services, supervised visits with J.W., and a psychological evaluation. However, after the psychological evaluation in December 2015, the treating psychologist and DCS recommended that Father continue random urinalysis testing, begin long-term substance-abuse treatment, and participate in individualized counseling. Instead of continuing to comply with these services, Father failed to complete a single random urinalysis test after December 2015 and willfully refused to participate in a hair follicle test pursuant to court order. Father also refused to complete intake for long-term substance-abuse treatment or participate in individual counseling after being referred to TERROS by DCS. These failures coincided with Mother's moving into his apartment.

¶13 Father argues that it is "not a requirement that a parent participate in all services offered by DCS." While there is no statutory requirement that a parent complete all of the reunification services DCS recommends, a parent's failure to complete or finish some services, despite completing others, can support a court's order of severance. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 28 (App. 2010). It was reasonable, based on the failure to continue random testing or long-term substance-abuse treatment, for the juvenile court to find that Father had not demonstrated complete sobriety. We therefore conclude that reasonable evidence supports the court's decision that Father failed to remedy the circumstances causing the child's court-ordered out-of-home placement.

¶14 We also find adequate support in the record for the court's conclusion that a substantial likelihood exists that Father will not be able to properly parent the child in the near future. Despite his acknowledgement that Mother has not proven sobriety, Father failed to appreciate the potential danger Mother poses to the child until she is sober. Father allowed Mother, who has continued to refuse the substance-abuse treatment services offered by DCS, to move into a one-bedroom apartment with him, and has failed to participate in random urinalysis testing since. While Father argues that Mother was "in the process of moving out" and that she would not see the child while the child was in Father's custody, the court may well have suspected this plan was not sincere, and if it was, it would not last. In any event, we must consider the circumstances as they

exist at the time of the severance hearing. *See Marina P.*, 214 Ariz. at 330, ¶ 22.

**¶15**        Additionally, the record contains evidence of Father's temper and inability to maintain emotional stability. A DCS Case Worker testified at trial that Father had become angry and argumentative with staff members at TERROS, and his outbursts during trial proceedings further displayed an inability to control himself. Accordingly, sufficient evidence exists to support the juvenile court's determination that severance of Father's parental rights was justified under A.R.S. § 8-533(B)(8)(c).

### Severance is in the Best Interest of J.W.

**¶16**        Father also contends that severance of his parental rights is not in the best interest of the child. "[A] determination of the [child's] best interest must include a finding as to how the [child] would benefit from a severance *or* be harmed by the continuation of the relationship." *Raymond F.*, 224 Ariz. at 379, ¶ 30 (citing *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). The court will consider whether (1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the child is adoptable. *Id*.

**¶17**        The juvenile court found that severance was in the child's best interests because it would allow a plan of adoption to go forward which would benefit the child by providing him with "permanency, stability, safety, and protection in a substance-free home." The court's ruling is supported by the fact that the child is already in a prospective adoptive placement that is meeting all of the child's needs. Furthermore, the child is adoptable and has no special needs.

**¶18**        Father does not dispute that the child benefits from his current placement, but argues that the court did not find leaving his parental rights intact would impair those benefits. However, the juvenile court must find only that the child would benefit from severance *or* be harmed by the continuation of the parent-child relationship. *Raymond F.*, 224 Ariz. at 379, ¶ 30. The court need not find that the continuation of the parent-child relationship would harm the child. Thus, the juvenile court did not err in finding that severance was in the child's best interest.

**CONCLUSION**

**¶19**      For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA